IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

CRAIG ALLEN IRVIN,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C15-4007

REPORT AND RECOMMENDATION

TABLE OF CONTENTS

I.     INTRODUCTION ......................................... 2

II.    PROCEDURAL BACKGROUND .......................... 2

III.   PRINCIPLES OF REVIEW .............................. 3

IV.    FACTS ................................................. 5
       A.  Irvin's Education and Employment Background .............. 5
       B.  Administrative Hearing Testimony ...................... 5
           1.   Irvin's Testimony .............................. 5
           2.   Vocational Expert's Testimony .................. 6
       C.  Irvin's Medical History ............................. 7

V.     CONCLUSIONS OF LAW ................................. 10
       A.  ALJ's Disability Determination ...................... 10
       B.  Objections Raised By Claimant ....................... 13
           1.   Dr. Mohammed's and Dr. Chao's Opinions ........... 13
           2.   Credibility Determination ...................... 17
           3.   Hypothetical Question .......................... 21

VI.    CONCLUSION ........................................... 22

VII.   RECOMMENDATION .................................... 22

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Craig Allen Irvin on January 20, 2015, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Irvin asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Irvin requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On December 12, 2011, Irvin applied for both disability insurance benefits and SSI benefits.[1] In his applications, Irvin alleged an inability to work since December 1, 2009 due to lumbar degenerative disc disease, osteoarthritis of the knee, and obesity. Irvin's applications were denied on January 26, 2012. On April 3, 2012, his applications were denied on reconsideration. On July 22, 2013, Irvin appeared via video conference with his attorney before Administrative Law Judge ("ALJ") Jan E. Dutton for an administrative hearing.[2] Irvin and vocational expert Gail F. Leonhardt testified at the hearing. In a decision dated August 9, 2013, the ALJ denied Irvin's claims. The ALJ determined that Irvin was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing his past relevant work as a telemarketer. Irvin appealed the ALJ's decision. On January 16, 2015, the Appeals

---

[1] The record provides various protective filing dates for both applications, but it appears likely that Irvin protectively filed for SSI benefits on November 7, 2011, and for disability insurance benefits on November 21, 2011. *See* Administrative Record at 170 (SSI benefits); 175 (disability insurance benefits).

[2] At the administrative hearing, Irvin was represented by attorney Jeremy Blain. On the instant appeal, he is represented by attorney Wil L. Forker.

Council denied Irvin's request for review. Consequently, the ALJ's August 9, 2013 decision was adopted as the Commissioner's final decision.

On January 20, 2015, Irvin filed this action for judicial review. The Commissioner filed an Answer on March 30, 2015. On April 28, 2015, Irvin filed a brief arguing that there is no substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing his past relevant work as a telemarketer. On June 26, 2015, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On July 2, 2015, Irvin filed a reply brief. On July 6, 2015, Judge Mark W. Bennett referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant

evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d

1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Irvin's Education and Employment Background

Irvin was born in 1961. He did not graduate from high school, but later earned a GED. In the past, he worked as a telemarketer and a construction worker.

### B. Administrative Hearing Testimony

#### 1. Irvin's Testimony

At the administrative hearing, the ALJ asked Irvin why he stopped working. Irvin explained that he stopped working because his pain was "so unbearable I couldn't do my job."[3] Irvin further explained that "I was missing work. I was going to the emergency room probably once a week. I started off missing a day, then it was two days and three days then the whole week."[4] Next, the ALJ asked Irvin to describe his typical day. Irvin responded that he spends all his time at home sitting or laying on the couch watching television. According to Irvin, he watches television for six or seven hours, and reads for about 1 hour each day. He stated that he is unable to do any household chores. The ALJ also inquired about Irvin's pain levels:

---

[3] Administrative Record at 41.

[4] *Id.*

Q: How would you rate the pain?
A: It's a 10.
Q: Even when you, do you sometimes take the pain meds?
A: I just took some before I come out here.
Q: When you take the pain meds how do you rate it?
A: A 10.
Q: So is it a 10 with or without the meds?
A: Both, with and without.
Q: So the meds don't make any difference?
A: Slightly, they'll help me, like I said, they help me fall asleep with the sleeping pill basically. And they might take it down to maybe, my pain down to like a six. I've been living at least with, at least at a six since I got hurt.

(Administrative Record at 46-47.) Lastly, the ALJ noted that Irvin stood up and sat down periodically throughout the hearing. Irvin stated that changing positions helps his leg and back pain "a little bit."

Irvin's attorney also questioned Irvin at the administrative hearing. Irvin's attorney inquired whether Irvin had any difficulties with falling. Irvin responded that over the past 3.5 months, he had fallen going up and down stairs, and in the kitchen, dining, living, and bathroom of his apartment. According to Irvin, his knees give out. He stated he has been using a cane to help avoid falling. Irvin's attorney also inquired about side effects associated with Irvin's medications. Irvin stated that his medication makes him drowsy, tired, and have "no energy whatsoever." Additionally, he stated that he gets blurred vision and needs to have water "all the time" due to his medications.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Gail Leonhardt with a hypothetical for an individual who can:

occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds. Can stand, sit, or walk six hours in an eight hour day. Can occasionally do postural activities, climb, balance,

> stoop, kneel, crouch, crawl. Should not work on ladders,
> ropes, or scaffolds, or with vibrating equipment.

(Administrative Record at 53-54.) The vocational expert testified that under such limitations, Irvin could perform his past work as a telephone solicitor. The ALJ provided the vocational expert with a second hypothetical for an individual who is reduced to:

> sedentary work and this is work where the person should not
> be on their feet more than two hours in an eight[ h]our day but
> could sit for six hours in an eight hour day. Not lift or carry
> over 10 pounds occasionally or frequently.

(Administrative Record at 54-55.) The vocational expert testified that such limitations would not change her opinion that Irvin could perform his past work as a telephone solicitor.

Irvin's attorney also questioned the vocational expert. Irvin's attorney asked:

> Q:   If a person can only sit for a total of two hours in an
>      eight hour work day and only stand or walk for a total
>      of one hour in an eight hour work day would they be
>      competitively employable even at the sedentary level?
> A:   No.

(Administrative Record at 55.)

## C. Irvin's Medical History

On December 31, 2011, Dr. Ahmed Mohammed, M.D., and Dr. Sophia Chao, DPT, provided the Social Security Administration with a "Physical Therapy Report" and "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" for Irvin. Dr. Mohammed and Dr. Chao diagnosed Irvin with left shoulder pain, low back pain, bilateral knee pain, posture/gait abnormality, and joint stiffness. Dr. Mohammed and Dr. Chao reviewed Irvin's subjective complaints and treatment history:

> [Irvin] reports constant lower back pain at 8/10 and sharp pain
> at front chest wall during sudden trunk rotation.
> Exacerbations generally happen with activities or after
> prolong[ed] standing and sitting. [Irvin] reports lower back

7

pain began in 2005 while lifting a 60 [pound] block[] . . . at work; bilateral leg[] pain and muscle cramping soon occurred after the injury and symptoms ha[ve] gotten worse. Diagnos[tic] tests including MRI and X-ray in 2007 showed [degenerative joint disease] in lower lumber spine and a grade I spondylolisthesis of L5 on S1, spurring of L3, history of an S1 fracture by report and partial sacrilization. [Irvin] has received spinal injection in 2006 and 2007 with no long term relief. He received therapy for 40 days in 2006 and 2007; was evaluated . . . in 2007 but did not keep his follow up appointment. He was evaluated . . . again in 2009 and kept one follow up visit. He was referred to [physical therapy] in 2010 and 2011 but did not show for his evaluation. According to Mr. Irvin, his pain is affecting his [activities of daily living] and he is not able to walk without pain. He states he is able to sit up to 2 hours, stand up to 10 min[utes] and ambulate for about 1/2 block before he has to sit and rest.

(Administrative Record at 489.) Upon examination, Dr. Mohammed and Dr. Chao determined that Irvin has multiple tender points to palpation, including his right upper traps, posterior scapulae/teres muscles, bilateral thoracic/lumbar spine paraspinals, bilateral posterior knees, and around the patella regions. Dr. Mohammed and Dr. Chao also found that Irvin is "50% limited in hip ROM limited by pain. He has limited trunk flexion at 75% in standing and 50% in sitting as well as [less than] 75% limited extension with pain in lower back. His cervical ROM is limited 50% in rotation and side bending bilaterally."[5] Furthermore, Dr. Mohammed and Dr. Chao found that:

[Irvin] is not able to lift more than 10 lbs x 3 in 30 sec[onds] from waist height to chest height; he is not able to kneel, crouch or crawl. His also unable to climb ladder, rope or scaffold. He is unable to reach his left arm overhead but is able to reach his right arm overhead. He is able to reach behind his back with bilateral hands. He is not able to ambulate without an aid of single point cane.

---

[5] Administrative Record at 489.

(Administrative Record at 489.) Dr. Mohammed and Dr. Chao concluded that:

> [Irvin] has multiple tender points with palpation along with lower back. He has associated joint stiffness and weakness throughout especially in this pelvis/hips and trunk and distal extremities. He is not able to stand or sit for a long period[s] of time and [h]e is not able to ambulate for long distance[s] due to multiple joint pains.

(Administrative Record at 490.)

On the "Ability to Do Work-Related Activities" form, Dr. Mohammed and Dr. Chao determined that Irvin could occasionally lift up to 20 pounds, and occasionally carry up to 10 pounds. Dr. Mohammed and Dr. Chao also determined that Irvin could sit for two hours at a time without interruption, and stand and walk 10 minutes at a time without interruption. In an eight-hour workday, Irvin could sit for a total of two hours, stand for one hour, and walk for one hour. Dr. Mohammed and Dr. Chao further opined that Irvin could only walk 1/2 of a block without the use of a cane. Lastly, Dr. Mohammed and Dr. Chao opined that Irvin should never climb, balance, stoop, kneel, crouch, or crawl in the work setting.

On January 25, 2012, Dr. Gary Cromer, M.D., reviewed Irvin's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Irvin.[6] Dr. Cromer determined that Irvin could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-

---

[6] On April 3, 2012, Dr. Jan Hunter, D.O., reviewed Irvin's medical records and considered Dr. Cromer's RFC assessment for Irvin in determining her own RFC for Irvin. *See* Administrative Record at 96-98. Dr. Hunter's RFC assessment is essentially identical to Dr. Cromer's RFC assessment, and Dr. Hunter concluded that "the prior rfc assessment continues to be appropriate and may be affirmed as written." *Id.* at 98.

hour workday, and (5) push and/or pull without limitations. Dr. Cromer also determined that Davis could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Cromer found no manipulative, visual, communicative, or environmental limitations.

On December 5, 2012, at the request of Irvin's attorney, Dr. Mohammed filled out a "Residual Functional Capacity Questionnaire." Dr. Mohammed diagnosed Irvin with low back pain, type 2 diabetes, obesity, osteoarthritis in his knees, and hypertension. Dr. Mohammed opined that Irvin's prognosis was poor. Dr. Mohammed noted that pain in Irvin's lower back, legs, and knees significantly limits his mobility. Dr. Mohammed opined that Irvin's pain is severe enough to "constantly" interfere with his attention and concentration for performing even simple work-related tasks. Dr. Mohammed outlined the following functional limitations for Irvin: (1) he is able to walk one block without rest or significant pain; (2) he can sit for one hour at a time; (3) he can stand/walk for 10 minutes at one time; (4) he can sit a total of two hours in an eight-hour workday; (5) he can stand/walk a total of one hour in an eight-hour workday; (6) he would need to take a short break (5 minutes or less) every hour during an eight-hour workday; (7) he can frequently lift less than 10 pounds, occasionally lift 10 pounds, and never lift 20 pounds or more. Lastly, Dr. Mohammed estimated that Irvin would miss four or more days of work per month due to his impairments or treatment for his impairments.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Irvin is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young*

10

*v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant

work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Irvin had not engaged in substantial gainful activity since December 1, 2009. At the second step, the ALJ concluded from the medical evidence that Irvin has the following severe impairments: lumbar L5-S1 degenerative disc disease, osteoarthritis of the knee, and obesity. At the third step, the ALJ found that Irvin did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Irvin's RFC as follows:

> [Irvin] has the residual functional capacity to perform sedentary work . . . except [he] should be allowed to ambulate with the use of a cane. [Irvin] can occasionally climb, balance, stoop, and perform other postural activities. [He] should avoid climbing ladders, ropes, or scaffolds and working on vibrating equipment.

(Administrative Record at 13.) Also at the fourth step, the ALJ determined that Irvin was capable of performing his past relevant work as a telemarketer. Therefore, the ALJ concluded that Irvin was not disabled.

## B. Objections Raised By Claimant

Irvin argues that the ALJ erred in three respects. First, Irvin argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Mohammed, and treating physical therapist, Dr. Chao. Second, Irvin argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Lastly, Irvin argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Dr. Mohammed's and Dr. Chao's Opinions

Irvin argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Mohammed, and treating physical therapist, Dr. Chao. Specifically, Irvin argues that the ALJ failed to properly weigh Dr. Mohammed's and Dr. Chao's opinions. Irvin also argues that the ALJ's reasons for discounting Dr. Mohammed's and Dr. Chao's opinions are not supported by substantial evidence in the record. Irvin concludes that this matter should be remanded for further consideration of Dr. Mohammed's and Dr. Chao's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has

offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also Cline v. Colvin*, 771 F.3d 1098, 1105 (8th Cir. 2014) ("[L]ess weight may be given to the treating physician's opinion, but the ALJ must always 'give good reasons' for doing so. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (quoting 20 C.F.R. § 404.1527(c)(2))."). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In her decision, the ALJ addressed Dr. Mohammed's and Dr. Chao's opinions as follows:

> Sophia Chao, a physical therapist, and Ahmed Mohammed, M.D., at Winnebago clinic, completed a joint Medical Source Statement on December 30, 2011 (submitted post hearing as

14

11F, which is a duplicate of 10F and which was previously considered by DDS) and opined that [Irvin] was much more limited than found by the state agency physicians. They opined that [Irvin] had a poor prognosis, had such serious pain that it would constantly interfere with attention and concentration, would need frequent breaks, could stand/walk only one hour a day and sit for two hours a day, and should be allowed to alternate positions as needed and as frequently as every hour. They opined that [Irvin] could occasionally lift 10 pounds [and] frequently lift less than 10 pounds as well as other limitations (10F).

Of note, both Dr. Hunter and Dr. Cromer of the State agency, reviewed the opinion expressed in the physical therapy statement and discredited it, they found that it simply repeated [Irvin's] report of his limitations and did not give it much weight. The undersigned agrees that these limitations are out of proportion with the objective medical evidence.

In reviewing the physical therapy and medical progress notes of Ms. [*sic*] Chao and Dr. Mohammed, the undersigned finds that they are not fully consistent with their Medical Source Statement. The undersigned notes that they identified multiple tender points with palpation along the lower back, associated joint stiffness and weakness throughout, especially in his hip/pelvis and trunk and distal extremities. They provided also functional limitations in a letter dated December 30, 2011 that corresponded with the Medical Source Statement. However, they wrote in a []Physical Ability To Do Work-Related Activities Form that it was completed according to "subjective reports" and objective assessment. The undersigned is convinced that their opinion relied more on [Irvin's] subjective complaints than the objective evidence.

The objective report found some tender points, a positive straight leg raise, and limits in range of motion. However, the letter also indicated that [Irvin] has a history of not following through with therapy. On multiple occasions, [he] did not keep his follow-up appointment for physical therapy. At

times, his symptoms worsened because he did not take his medications as prescribed. Other factors indicate that this opinion is not deserving of significant weight, include the fact that [Irvin's] medications were ceased by his primary care physician. Laboratory tests have been negative for prescribed medications that he should have been taking. Other progress notes indicate that his hydrocodone had improved his pain a lot and he was allowed to work in his daily activities when taking it (5F/4).

The medical source statement at 10F indicates that [Irvin] has problems using the hands and arms (can only use arms for 1% of day and hands for 2% of day and fingers for 3% of day), but there is no basis for this whatsoever in the record and at the hearing, [Irvin] testified that there was nothing wrong with his hands. Clearly the evaluator did not understand the rating system or disregarded the medical evidence in an attempt to help [Irvin] obtain benefits. The undersigned also notes that the checklist from the physical therapist and the treating doctor is not consistent with the physical therapy discharge report that found [Irvin] capable [of] performing sedentary work. In light of these factors, the undersigned is not inclined to give much weight to this opinion to this medical source statement. Greater weight has been accorded the State agency experts as discussed above.

(Administrative Record at 16-17.)

Additionally, in her decision, the ALJ addressed the objective medical evidence in the record.[7] For example, the ALJ noted that "[d]ue to multiple failures to show, [Irvin] was discharged from physical therapy in July 2011 (3F/22)."[8] The ALJ also found that "X-rays in July 2011 revealed "very modest" degenerative disc and degenerative facet

---

[7] *See* Administrative Record at 14-15.

[8] *Id.* at 14.

disease, most severe at the L5-S1 level, but otherwise negative (6F/6)."[9] Furthermore, the ALJ noted that a progress note dated April 24, 2012 "indicated that [Irvin] had occasional exacerbations of low back pain for no particular reason, such as when he ran out of medications (6F/33)."[10]

Having reviewed the entire record, and considered the ALJ's discussion of the objective medical evidence and review of Irvin's treatment history, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Mohammed and Dr. Chao. Specifically, the ALJ determined that Dr. Mohammed's and Dr. Chao's opinions were "not deserving of significant weight," and addressed inconsistencies between Dr. Mohammed's and Dr. Chao's opinions and the record as a whole. Therefore, the Court concludes that the ALJ properly considered and applied the factors for evaluating a treating source opinion, and properly determined that the opinions were "not deserving of significant weight." *See Hamilton*, 518 F.3d at 609. The ALJ also thoroughly explained her reasons for not granting Dr. Mohammed's and Dr. Chao's opinions "significant" weight. *See Cline*, 771 F.3d at 1105 ("[L]ess weight may be given to the treating physician's opinion, but the ALJ must always 'give good reasons' for doing so. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (quoting 20 C.F.R. § 404.1527(c)(2))."). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 2. *Credibility Determination*

Irvin argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Irvin maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly

---

[9] *Id.* at 14-15.

[10] *Id.* at 15.

considered Irvin's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*,

353 F.3d 642, 647 (8th Cir. 2003).").  Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ addressed Irvin's credibility as follows:

> In considering the objective record and the medical opinions, the undersigned finds that [Irvin] is not fully credible. [Irvin] alleges that he cannot currently work because of low back pain, knee pain, feet pain, and leg pain. However, [Irvin] does not take any narcotic medications at this time and does not seek regular treatment as frequently as would be expected if he were in this amount of pain. [Irvin] has undergone knee injections, but complains of significant ineffectiveness that have not been documented in the record. . . .

> [Irvin] alleges having significant problems performing activities of daily living, but this is not consistent with the objective medical evidence or pattern of medical treatment. Radiology studies have found very modest degenerative disc disease at the lumber spine but an otherwise negative lumbosacral spine (6F/6).

> A review of [Irvin's] work history shows that [he] has gaps in his work history for reasons unrelated to the alleged disability and raises a question as to whether [his] continuing

> unemployment is actually due to medical impairments. [Irvin]
> said he has worked for four telemarketing operations; he quit
> his last job in 2009 due to alleged pain and was having
> problems with absenteeism; he didn't qualify for
> unemployment benefits. He said he doesn't plan to return to
> telemarketing because they don't pay enough.
>
> In considering the overall record, and giving some weight to
> [Irvin's] allegations, discharge report from physical therapy,
> and use of a cane to ambulate, the undersigned finds that
> [Irvin] is capable of performing a range of sedentary work as
> described above.

(Administrative Record at 17.)

In her decision, the ALJ thoroughly considered and discussed Irvin's treatment history, medical evidence, functional restrictions, activities of daily living, work history, and use of medications in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Irvin's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Irvin's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. Hypothetical Question

Irvin argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments. Irvin also argues that the ALJ's hypothetical did not contemplate all of his functional limitations. Irvin maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Irvin's testimony in determining Irvin's impairments and functional limitations.[11] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related

---

[11] *See* Administrative Record at 13-17.

limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## VI. CONCLUSION

I find that the ALJ properly considered and weighed the opinions of Dr. Mohammed and Dr. Chao, properly determined Irvin's credibility with regard to his subjective complaints of pain and disability, and provided the vocational expert with a hypothetical question that properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, I believe the ALJ's decision is supported by substantial evidence and should be affirmed.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **AFFIRM** the final decision of the Commissioner of Social Security and enter judgment against Irvin and in favor of the Commissioner.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 2nd day of November, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA